# 11-1761

## 11-1839, 11-5318

IN THE
United States Court of Appeals
<u>FOR THE SECOND CIRCUIT</u>

UNITED STATES OF AMERICA

*Appellee,*

-against-

Lamar Thompson, Tyquan Morris, Emanuel Velasquez, AKA Cubano, AKA Doogie, Steven Buono, AKA Stevie, AKA Yay Yo, AKA Black, Kevin A. Huffman, Jr., AKA Fat Kev, AKA Sporty, Antoine Evans, AKA Freckles, AKA Ant, Ronnell Garmie, AKA Rah, AKA Blue, Isaiah Presley, AKA Freaky, Dennis Miller, AKA Preach, Daron Thompson, AKA Skyma, Severne Watson, AKA SP, Joel Richards, AKA Jo Jo, Diana Cordero, AKA Candy, Camelin Morris, AKA Dread, John Salabarria, AKA Johnny, Kisha Miller, Phylicia S. Evans, AKA Pink, AKA Tiny, Kenron Mitchell, AKA Taliban, Anthony Manigault, AKA Ice, John Butler, AKA Light, Tiras Segrede,

*Defendants,*

Tyrese Morris, AKA Reese, Stanley Jackson, AKA Turk, Kenneth Manigault, AKA Bubba, Anthony Manigault, AKA Ice

*Defendant-Appellant,*

ON APPEAL FROM THE UNITED STATES DISTRICT
COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

**BRIEF FOR DEFENDANT-APPELLANT**

ANDRES M. ARANDA
930 Grand Concourse, Suite 1A
Bronx, New York 10451
(718) 590-1904 / (718) 541-9241
*Attorney for Defendant-Appellant*

i

# Table of Contents

Table of Authorities ................................................................... ii

Jurisdictional Statement / Questions Presented ....................... 1

Preliminary Statement............................................................... 1

LEGAL ARGUMENT............................................................... 7

Conclusion ................................................................................ 12

i

# **Table of Authorities**

Dorsey v. United States, 132 S. Ct. 2321, 2331 (2012).......................... 2

1 U.S.C. §109 ................................................................................... 5

## JURISDICTIONAL STATEMENT

Defendant appeals as of right pursuant to Rule 3(a)(1) of the Federal Rules of Appellate Procedure from a final judgment of the United States District Court for the Southern District of New York (Castel, K.P.) dated and filed November 16, 2011, convicting Defendant of violating 21 U.S.C. § 841(b)(1)(A) and sentencing him to 120 months imprisonment and 5 years supervised release.

This Court has the jurisdiction to hear this appeal pursuant to 28 U.S.C. § 1291.

## QUESTION PRESENTED

1. Should the Defendant-Appellant have been sentenced pursuant to the Fair Sentencing Act, as requested by Counsel and agreed upon by the Government?

We submit that the answer is yes.

## PRELIMINARY STATEMENT

Appellant-Defendant Anthony Manigault ("**Manigault**" or "**Appellant**") respectfully submits this Memorandum of Law in support of his appeal from the judgment and sentencing of the District Court, Southern

District of New York, convicting him of conspiracy to distribute narcotics, in violation of 21 U.S.C. § 841(b)(1)(A), and sentencing him to 120 months imprisonment and 5 years supervised release.

Mr. Manigault's appeal presents this Court with an issue of judicial interpretation. Specifically, we respectfully submit that, in light of the August 3, 2010 passing of the Fair Sentencing Act of 2010 ("**FSA**" or "**the Act**") and the United States Supreme Court decision in Dorsey, the FSA retroactively applies when sentencing a defendant, such as herein. Instead of having his sentencing based on the old Statute, Mr. Manigault should have been sentenced according to the FSA, thus qualifying for a far lower sentence than that imposed by the District Court Judge.

In the case of Mr. Manigault, in a letter dated August 22, 2011, the government expressed its desire to have the appellant sentenced under the guidelines of the FSA. This was pursuant from the expressed policy of the Department of Justice, specifically from the United States Attorney General Eric Holder who wrote in a July 12, 2011 memorandum, "I have concluded that the law requires the application of the Act's new mandatory minimum sentencing provisions to all sentencings that occur on or after August 3, 2010, regardless of when the offense conduct took place." (3a)

As noted in Dorsey, Congress passed the FSA to repudiate the draconian policies of the Anti-Drug Abuse Act of 1986, which mandated penalties for crack cocaine and powder cocaine according to a 100:1 ratio, and to create greater proportionality between like drug-trafficking sentences. (1) During sentencing, the Court argued the general savings statute undermined the potential retroactive application of the FSA, as it states a new criminal statute that repeals an older criminal statute shall not change the penalties incurred under that older statute "unless the repealing Act shall so expressly provide." 1 U.S.C. §109. However, as affirmed by the Supreme Court decision in Dorsey, Congress's intent in the FSA need not be explicitly stated, but instead can be and is reasonably inferred. Thus, the Act does "expressly provide" and those pre-Act offenders sentenced post-Act, such as Mr. Manigault, should be sentenced pursuant to the FSA rather than the more severe penalties of the 1968 Act.

Noting that District Judge Castel agreed Mr. Manigault's crime entitled him to be sentenced according to the law's minimum and the recent Supreme Court's decision in Dorsey, the Appellant's sentence should be vacated and remanded for further proceedings.

## STATEMENT OF FACTS

### Mr. Manigault's Plea Allocution

The information against Mr. Manigault charged him with conspiracy to distribute narcotics, in violation of 21 U.S.C. § 841(b)(1)(A). (1)  On May 13, 2009, an unsealing order was filed as to indictment S1-09-Cr.-381, which charged the Appellant, as well as others, with violating the narcotics laws of the United States.  On September 8, 2009, Mr. Manigault was arraigned before the Honorable Magistrate Judge Kevin Nathaniel Fox.  Six days later, on September 14, 2009, Mr. Manigault made his initial appearance in the District Court before the Honorable P. Kevin Castel, USDJ.  There, Mr. Manigault entered a plea of guilty.  District Judge P. Kevin Castel accepted the plea.

### Pre-Sentencing Report

Following Mr. Mangault's plea allocution, the United States Probation Department submitted a final Pre-Sentencing Report on August 23, 2011 (hereinafter "**PSR**").  In that report, the Probation Department calculated the defendant's base offense level at 28 because, under the previous guidelines of the Anti-Drug Abuse Act of 1986, the offense involved between 50 and 150 grams of crack cocaine base. (1)  The Probation Department also included a two-level enhancement for the defendant's leadership position within the conspiracy and a three-level

reduction for acceptance of responsibility, yielding a total offense level of 27. (1) The PSR submitted this offense level would bring with it a 120-month imprisonment sentence. This is due to the applicability of the mandatory minimum sentence that attends Mr. Manigault's conviction pursuant to the enhanced sentencing provisions of 21 U.S.C§ 841(b)(1)(A). (1)

### The Sentencing Hearing

The day prior to the sentencing hearing, on November 15, 2011, the Government filed a letter requesting the Sentencing Court sentence Mr. Manigault pursuant to the FSA. (1) In this letter addressed to District Judge P. Kevin Castel, the Government noted the Probation Department's offense level calculation was incorrect as it did not reflect the changes to the Sentencing Guidelines as altered by the FSA. Rather than having a base offense level of 28, the base offense level under the FSA should have been 26, as the offense involved between 28 and 112 grams of crack cocaine base. With the adjustments accounted for in the PSR, Mr. Manigault's total offense level should have been 25. Under the FSA, the Government noted this offense level should have made Mr. Manigault subject to a 5-year minimum sentience, resulting in an advisory Guidelines range of 60 to 71 months imprisonment. The Government also noted that their position was

pursuant to the July 15, 2011 memorandum of United States Attorney General Eric Holder, who held that the FSA was retroactive in a case such as this. (1)

Mr. Manigault's sentencing hearing took place on November 16, 2011. At the sentencing, Mr. Manigault and his Counsel argued for a sentence pursuant of the FSA, but were ignored. District Judge P. Kevin Castel cited the Second Circuit's decisions in <u>United States v. Diaz</u> and <u>United States v. Acoff</u> and concluded, under the general savings statute, the FSA did not render itself applicable retroactively. District Judge P. Kevin Castel stated, "Under the general savings statute the repeal of any statute shall not have the effect to release or extinguish any penalty incurred under such statute unless the repealing act shall so expressly provide." (1) According to Judge Castel, "the reality is that the Fair Sentencing Act of 2010 does not so expressly provide and, therefore, it is not retroactive." (1) Mr. Manigault was then sentenced to 120 months imprisonment and 5 years supervised release.

## Later Related Proceedings

On NEED DATE, an appeal was filed by several of the defendants in Mr. Manigault's original conspiracy dealing the issue of the FSA's retroactive applicability. This appeal was pursuant to the Supreme Court's

<u>Dorsey v. United States</u> decision on June 21, 2012. 132 S. C. 2321, 2331 (2012). In <u>Dorsey</u>, the Supreme Court decided that Congress's intention was readily apparent within the FSA and, in fact, did "expressly provide." (1) Thus, the FSA's new sentencing guidelines were applicable retroactively to pre-Act offenders sentenced post-Act. Accordingly, October 22, 2012, the Honorable Court remanded Tyquan Morris's (11-4686) and Kenneth Manigault's (11-5005) sentences for de novo resentencing by the Sentencing Court. This Court also noted, "The Fair Sentencing Act's more lenient penalties […] apply to those offenders whose crimes [involved in trafficking in crack cocaine] preceded August 3, 2010, but who are sentenced after that date." (1)

## LEGAL ARGUMENT

### Mr. Manigault Should Have Been Sentenced Pursuant of the Fair Sentencing Act of 2010

The Sentencing Court erred in denying Mr. Manigault a sentence under the guidelines provided by the Fair Sentencing Act of 2010. This fact is supported by the Supreme Court decision in <u>Dorsey</u> that ruled the new, more lenient mandatory minimum provisions of the FSA apply to post-Act sentencing of pre-Act offenders.

In his sentencing, the Honorable Judge P. Kevin Castel's main rationale for denying Mr. Manigault sentencing under the FSA's new mandatory minimum was that he felt under the general savings statue [referred to by the Supreme Court in <u>Dorsey</u> as the "federal savings statute"], Act of Feb. 25, 1871 (1871 Act), §4, 16 Stat. 432, the Fair Sentencing Act of 2010 did not render itself applicable retroactively. Under the general savings statute, a criminal statute that "repeal[s]" an older criminal statute shall not change the penalties "incurred" under that older statute "unless the repealing Act shall so expressly provide." 1 U.S.C. §109. District Judge P. Kevin Castel stated, "The reality is that the Fair Sentencing Act of 2010 does not so expressly provide and, therefore, it is not retroactive." (1) The Supreme Court, however, disagrees with this contention. In <u>Dorsey</u>, it was ruled, in combination with the Sentencing Reform Act and other related circumstances, Congress clearly intended for the FSA's new mandatory minimums to be applied retroactively.

Six considerations led the Supreme Court in <u>Dorsey</u> to arrive at their conclusion that Congress clearly intended for post-Act sentencing of pre-Act offenders to occur with the FSA's new minimums in mind.

**First**, the general savings statute permits Congress to apply a new Act's more lenient penalties to pre-Act offenders without expressly saying so in the new Act. According to the Dorsey decision, though the statute uses the words "expressly provide", the Court has long recognized that the saving statute creates a less demanding interpretive requirement. The general savings statute "cannot justify a disregard of the will of Congress as manifested either expressly or by necessary implication in a subsequent enactment." *Great Northern R. Co., supra*, at 465. Thus, Congress's intent can be shown through "necessary implication," "clear implication," or "fair implication." *Great Northern R. Co., supra*, at 465, 466; *Hertz* v. *Woodman*, 218 U.S. 205, 218 (1910); *Marrero, supra*, at 660, n. 10.

**Second**, the Sentencing Reform Act sets forth a special and different background principle in 18 U.S.C. §3553(a)(4)(A)(ii), which applies unless ex post facto concerns are present. Since ex post facto concerns are not present, the new, lower Guidelines amendments become effective to offenders who committed an offense prior to the adoption of new amendments but are sentenced thereafter.

**Third**, language in the FSA implies Congress intended to follow the Sentencing Reform Act background principle. Section 8 of the FSA

requires the Sentencing Commission to promulgate "as soon as practicable" "conforming amendments" to the Guidelines that "achieve consistency with other guidelines and applicable law." §8, 124 Stat. 2374. In other words, to "achieve consistency with other guideline provisions", the Commission would have to reduce the base offense levels for all crack amounts proportionally. Thus, consistency with "other guidelines provisions" and prior Commission practice would require application of the new Guidelines as amended by the FSA to apply to offenders who committed their offense before the FSA's effective date but where sentenced thereafter.

**Fourth**, applying the Anti-Drug Act of 1986's old mandatory minimums to the post-August 3, 2010 sentencing of pre-August, 2010 offenders would create disparities of a kind that Congress enacted the Sentencing Reform Act and the FSA to prevent. For example, a first-time post-Act offender with 5 grams of crack sentenced the same day as a first-time pre-Act offender with the same amount of crack would receive roughly a 21 to 27 month sentence, while the pre-Act offender would be sentenced to a minimum 5-years for the same crime. Moreover, the pre-Act offender would be subject to that penalty at a time after Congress had specifically found in the FSA it was unnecessarily long.

**Fifth**, not to apply the FSA would do more than preserve a disproportionate status quo; it would make matters worse. This would create a new set of disproportionate sentences, as the sentencing courts must apply the new FSA minimums to pre-Act offenders and the Anti-Drug Act of 1986's minimums would trump those new Guidelines for some, but not all pre-Act offenders. For example, if a pre-Act offender where convicted of possession with intent to distribute 4 grams of crack, there would be no mandatory minimum under the 1986 Act. (1) While the Sentencing Commission had created a Guidelines range of 41 to 51 for such an offense, the FSA required the Commission to write new Guidelines consistent with the new law. The Commission therefore wrote new Guidelines that provide a sentencing range of roughly 2 years for such an offender. Since the Sentencing Reform Act requires application of those new Guidelines to all offenders, those new Guidelines must take effect. The pre-Act 4-gram offender would be subject roughly a 2-year sentence. However, unless the FSA applies retroactively, an otherwise identical pre-Act offender convicted with 5 grams of crack would receive a 5-year sentence. That would create a new disparate sentencing cliff, as a single gram of crack cocaine would result in a sentencing disparity of roughly 3-years.

**Sixth**, the Supreme Court found no strong countervailing considerations that would make a critical difference.

For those six reasons, the Supreme Court ruled that the Fair Sentencing Act's new minimums apply to all those sentenced after August 3, 2010, like Mr. Manigault.

To further support of Mr. Manigault's appeal, it should be noted that both Tyquan Morris and Kenneth Manigault, appellants in Mr. Manigault's original conspiracy, have both had their sentences vacated and their cases remanded for resentencing under the FSA.

Because Mr. Manigault's sentence was incorrectly pursuant of the Anti-Drug Act of 1986, his sentence should be vacated and remanded for resentencing under the Fair Sentencing Act of 2010.

## CONCLUSION

For the reasons above, we respectfully submit that Mr. Manigault's sentence should be vacated and his case remanded for resentencing pursuant to the Fair Sentencing Act of 2010.